Next case for argument, case number 24-2543 from the Southern District of Iowa, United States v. Garry Behrens. Please click. Good morning. May it please the court. Mr. Behrens challenges the denial of his motion to suppress. Law enforcement initiated a traffic stop of the truck Mr. Behrens was a passenger in because the vehicle's registered owner, a woman, did not have a valid driver's license. This is allowed under the Glover case from the Supreme Court. However, while walking up to the truck, the officer saw that the driver was a man. Once the officer realized the driver was not the registered owner, the seizure must have immediately ended because there was no basis for any continued detention. Any evidence obtained after this unlawful extension of the seizure must be excluded. Our argument comes from principles from several Supreme Court cases. Starting first with Delaware v. Prowse, where the Supreme Court said officers cannot initiate a traffic stop just based off the concerns of wanting to check license and registration. And then in Florida v. Royer, the court said that any seizure must not last any longer than necessary to effectuate the purpose of the stop. Surely the officer can approach and say, oops, I made a mistake, sorry about that. I mean, it would be odd to just turn around and walk away and not do anything, right? Do you have a case that says he can't go up and say, oops, I made a mistake? I don't have a case that says they can't even approach the vehicle. I know the Second Circuit has rejected that argument in the Jenkins case. But I think reasonable depends on the circumstances. You know, you can wave someone off at the very least. And what the case we cite out of New Jersey, they can go up and say, oh, I was wrong. You're free to leave and then go back to their patrol car. Why isn't it just an adjunct of the case? Oh, darn it, I'm sorry. A case that says you can approach a pedestrian and a police officer can always approach a pedestrian. Maybe with some suspicion. But regardless, say, can I have a minute? Will you talk to me? And as long as you reserve the person's right to walk away, you haven't violated the Fourth Amendment by approach in question. I think it's trickier in the circumstance. I think, like, if you were on the street and an officer can walk up and talk to me. But this is a parked car. Right. And typically, I think in the case, I can't remember the name of the case, but there was already some suspicion. And the pedestrian was in a place where the officer would think likely to be hard to find. So we stopped him. Like here. I think the problem is that he's initially seized. So I don't think for that to work, you'd have to say, well, there's a traffic stop, there's a seizure. And even though our position is that the grounds for that seizure is gone, we can then treat it almost like a consensual encounter. Well, except the car was stopped, wasn't it? The car was stopped, yes. Yes. And if the court is saying, well, they have. . . It was parked in a way where you could be concerned that if the driver's impaired or doesn't have a license, in a perfect position to drive away. Or just want to say, I want to talk to you about the conditions of your lights and so forth. Or can say, you know, you're parked plenty and what's going on. I think to get to that, there would have to be some sort of reasonable suspicion. Of what? Of some kind of criminal activity. The way it's parked? The condition of the vehicle? I think that would not rise to the level of reasonable suspicion of criminal activity. The person on the sidewalk isn't doing anything. Except the officer has a suspicion, you know. . . A suspicion that wouldn't satisfy a Terry Stop suspicion. I think. . . Just wants. . . As long as the person's here, if the person's willing to talk, I have a couple of questions. And the person. . . I'm not willing to talk. Right. But, oh, in the meantime, has to roll the window down. And guess what? The bad facts come out. I think in those circumstances where the court is talking about coming up on somebody on the street. . . And you don't necessarily have reasonable suspicion. But the cop might want to talk to someone. . . Like in a consensual encounter. I think it's very difficult to have a consensual. . . Custodian cares? Yeah. It's difficult to have that when you have someone who's already been subject to a traffic stop. I think, you know, they've got the lights. They've been pulled over. I think to then say it can transform into something consensual where you don't need reasonable suspicion. . . I'm not aware of any cases with that kind of fact pattern. I know officers can walk up to someone without reasonable suspicion. And they can be free to leave. But I don't think that's the circumstances we have here. Ms. Quick, isn't this case similar legally to U.S. v. Williams? In that case, the officer thought a car was stolen and then came to realize that he was mistaken. It was not stolen. But then in the course of this happening, he gained additional reasonable suspicion of other crimes. In this case, reasonable suspicion of impairment. So I think there's two reasons why Williams doesn't control in these circumstances. The first is my recollection, yes, there was a mistake about the initial seizure. But before the officers realized their mistake, then they gathered additional facts that supported continuing the seizure, establishing reasonable suspicion. That might be more like the cracked windshield case. I can't remember the name of it. They were still operating under their mistaken assumption that the driver's view was blocked. Right. So I think my recollection is that they learned more before they realized they were wrong. That could be incorrect. I would, of course, defer to the case. But here, that when the stop should have ended, then they couldn't have gone up and started asking more questions. And that's our position. But that gets to Judge Grunger's question, I think. Can't they always just come up and say, hey, here's why I stopped you, but you're free to go. And by the way, now I see that you're impaired. I think that most courts that have even have adopted the position that we're taking, that you can't continue the seizure and ask for a license and registration, have said that you can go up and then talk to them. Our position is that to say he could immediately tell that the individual was impaired is speculative. There was a finding by the district court that there was reasonable suspicion that he was impaired. But in the district court's analysis, it talked about not just what he saw in the first 5, 10 seconds that he walked up. It included the driver's response to questions and things he observed as the conversation continued. Our position is that that conversation cannot happen. And, officer, then we have the risk of this turning into a fishing expedition. The most that officers can do is come up and say, sorry, you can go and wave them off and leave. I don't think we have enough here to establish that there's reasonable suspicion in that just immediate shot that would have justified a continued detention. And the fact-finding we have I don't think is particular enough for the question as is being proposed here in this case. So in the alternative, we would ask that it be sent back to the district court to analyze and make that factual finding in the first instance. I want to address just quickly some of the, we talked a little bit about whether it was obvious he was under the influence immediately. The other two alternative bases the court should not rely on as proper to extend the stop in these cases. First, the traffic hitch. The Iowa Code 321.38 requires that a plate be eligible, legible, and free of foreign materials. This was a traffic hitch that was placed where it was intended to be by the manufacturer. And there was some split and confusion in Iowa about whether a traffic hitch that actually prevented an officer from reading the license plate was a valid basis for a stop. Whereas here, the officer was able to read the license plate because he could determine that the registered owner did not have a valid license. And as well as the license plate light. Again, it's not a reasonable mistake of fact. Iowa law is clear that you only need one light on and only when the headlight's on. The officer here testified that he did not attempt to determine whether the headlight was on, which is the basis for finding a violation of the statute. So unless there are immediate questions, I would like to reserve the remainder of my time for rebuttal. Thank you. Mr. Williams. Thank you, Your Honor. May it please the Court, Daryl Williams for the United States. As some of the questions have suggested, this case can be easily resolved on its facts. Everyone agrees the stop was valid under the Supreme Court's decision in Glover. Would you help me if you slowed down just a little? Sorry, Your Honor. And as we've discussed, the only question in this case is whether Sergeant Wheeler impermissibly extended the stop. The answer to that question is no. When the officer approached the window, he learned two things. First, he learned that, sure, the registered owner of the vehicle wasn't driving. But he also learned that the person who was driving this vehicle, Troy Schmidt, appeared to be impaired. And that reality resolves this case. But no matter what you think about when Sergeant Wheeler learned that Schmidt was driving the pickup, the entire stop was nonetheless justified because by the time he got to the window, he had reasonable suspicion that there were at least two other traffic violations that had occurred. And finally, even if the court were to believe that there was a violation of the Constitution at some point in the interaction, the Court may still affirm because the discovery of the meth-filled sock was attenuated. Indeed, the defendant's voluntary decision to throw the drugs away in a way that was visible to law enforcement. Not any officer misconduct was the reason those drugs were discovered. And so for any of those reasons, we ask that this Court affirm. And unless there are questions, I kind of want to start by unraveling a factual misconception that my friend injects into the case. Contrary to what he says on pages 14 and 15, and again in argument today, Officer Wheeler learned who was driving the car no sooner than the moment he got to the window. The District Court makes this finding at pages 2 and pages 7 of its opinion. Officer Wheeler's testimony at the suppression hearing on pages 12 of that transcript also makes clear that he didn't know who was driving the vehicle until he got to the window. And I think from there, everything else kind of falls into place. My friend doesn't disagree that the moment, I'm sorry, my friend doesn't disagree that an officer may extend a traffic stop based on reasonable suspicion developed in the course of investigating the reason for stopping the vehicle. Counsel, let's suppose, and this is perhaps hypothetical given the facts of this case, but let's suppose that when the officer got to the window and determined that the driver was not the person he thought it was, but there was no evidence of impairment. Can the stop be prolonged? And can he start asking to see driver's license, proof of insurance, registration, asking travel-related questions? I guess I'll start by agreeing with you that this is kind of a hypothetical because we're not in that situation again, Officer Wheeler. The reason I ask is that I don't see how that would be consistent with Rodriguez. Right. And before the court today, we aren't really pressing that strongest form of argument. And yet that's what the district court seemed to say in its opinion. Right. But, again, the court reviews judgments, not opinions. And so I think because it can affirm for any basis a portable on the record, I think it could go with us on this slightly narrowed version of our argument that, again, on the facts of this case, there was never a moment at which Officer Wheeler lacked reasonable suspicion to continue the stop. And I think once you get there, the suppression was proper. It just seems to me that what the officer perceived before he had the car pull over, unusual driving, let's put it that way, and a couple of conditions of the car that were questionable whenever he saw the light. I know there's some dispute about that. And so then he does a check, and he finds out that the register owner is not licensed. Well, isn't there a good argument that at that point, when the car does pull over so he doesn't have to deal with a flight, he has – it's not unreasonable to find out, to ask who's ever driving for a license. Right, Your Honor. We think – Even if he sees it's not a woman before the stop, he knows if it's the – the cases say he can infer a violation when the registered owner is unlicensed, and you can infer he or she is driving the car. Right. You have another basis to just – the first thing you do when you make a typical stop anyway, as I understand it, let me see your license. Right. But I guess I kind of want to, I guess, make clear what I said to Judge Graz in that we are not relying on this, again, the strongest form of that argument, which is like the moment he has reasonable suspicion to initiate the stop. I know, but you could. Again, I don't think we need to. Again, the government is kind of – You may need to. You don't know. I guess we don't know, but again, I don't think we need to. I think on the facts of this case, again, I guess to get to your question, the trailer hitch and seeing that it was obstructing the license plate was more than enough reason both to stop the car and to get to the window and to ask the drivers for license and registration. Again, we recognize there are some factual and legal questions surrounding that issue, so we think the easiest way to resolve this case is under – The registered owner is unlicensed was not the only basis for approaching the vehicle. Absolutely. Stopping and approaching. Exactly, exactly. We think the trailer hitch issue will get us there to the extent the court felt that. Another question is when was this – do we know when the sock was thrown from the car? It's unclear on the record before this court, but in the, I guess, dash cam footage that was made available to the defense counsel on the discovery in the district court, you could see that the sock kind of rolls out of from under the truck at around four minutes after the sock was initiated. So that is, again, a few minutes after Officer Wheeler originally – That's when it was found or it was seen thrown? That's when it was seen rolling from the vehicle. It was found about half an hour later after the ride-along told the officer what she had seen. But, again, I think on the facts of this case, this is quite easy to affirm here, and I think the court need do nothing different than what Judge Grinder and Judge Loken, what you both did in Quintero Felix in 2013, or what Judge Graz, you signed on to in Williams in 2019. We think this case is no different than those cases in that, again, there was never a moment where the officer lacked reasonable suspicion during the course of investigating the reason for stopping the vehicle. He learned new things that justified the continuation of the stop. So if we don't go as far as Judge Loken's suggesting and as you're suggesting we don't need to, Ms. Quick all but concedes or comes close to conceding that he can at least go up and say, sorry, been a mistake here. And I think she says there aren't enough facts found by the district court to establish reasonable suspicion at that point. What is there in the record that would establish reasonable suspicion at the point of just going up and saying, oops, made a mistake? Right. I think if we look at Officer Wheeler's testimony at the suppression hearing, he sees that when he approaches the window, Mr. Schmidt is kind of staring off into the distance. He's sweaty. He's nervous. He's got bloodshot eyes. He has, again, a blank stare on his face. He notices all that immediately? That's all immediately. And I think to the extent, I guess, Officer Wheeler's testimony doesn't get me far enough, I think if the court were to pull up Exhibit A from the suppression hearing, you will see that the moment Officer Wheeler approaches the vehicle, Mr. Schmidt is kind of like dazed. Again, Officer Wheeler said space cadet. I think that's an accurate description. Is the license plate, the light on the license plate part of that analysis as well or not? I think they're all stand-alone justifications. I think, again, if the court didn't think that the testimony and the body cam footage was enough to show that Officer Wheeler immediately noticed that Mr. Schmidt was impaired, I think it could, again, fall back on the trailer hitch and the tag light issues that, again, justify at least a continuation of the stop up until the point at which he saw that Mr. Schmidt was impaired based on his hundreds of interactions with impaired drivers during the course of his career. And, again, unless there are no further questions, we ask that the court affirm. And we think the district court was right. And if the court were to watch the video, Officer Wheeler was nothing but reasonable. And that's the ultimate touchstone of the Fourth Amendment. And, again, for that reason, we think affirmance is proper here. Thanks.  Ms. Quick?  So I want to go back. I was able to look at the Williams case. And there is a discussion in that case, and that was whether it was on the hot sheet and it was a stolen car. There is a mention of, well, it was only two minutes, which is a bit troubling and we would argue is inconsistent with Rodriguez. But my interpretation is that the court also noted that at the time they realized the car wasn't suspected being stolen, that there was also evidence of expired tags and other things that would have independently justified extending the stop. So that's our position on the Williams case. But the second point that I didn't get to was that I think these cases that are cited, the Foster case, the Williams case, those are post-Rodriguez, but the problem is that they treat pre-Rodriguez decisions as binding, which this Court's precedent is clear. If there's an intervening Supreme Court case that casts those decisions into doubt, then they're no longer binding. And our position is that Rodriguez did, and so they are not binding. You heard Mr. Williams' response to my question about whether there's a sufficient record, even just to go up and do the oops and what did he observe immediately. I think we have the license plate question, the light, and then him immediately noticing sweaty, nervous, et cetera. Isn't that enough? I would disagree, Your Honor. I think from what you see, what the officer testified, and the Court has the videos, obviously, is that he didn't smell any alcohol or didn't smell marijuana. He said his mouth was open. But again, the District Court's factual findings relied on additional factors that we support as inappropriate, including what happened during the conversation. So I would just push back on that. Thank you. Thank you, counsel. Case has been well briefed. Argument's been helpful. We'll take it under advisement.